**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

In re: Charles K. Breland, Jr.      )
                                      )
                                      )   **CASE NO.: 1:17-CR-00312-JB**
                                      )
                                      )
                                      )

## ORDER

This matter is before the Court on Appellant Charles K. Breland, Jr.'s ("Breland" or "Appellant") Appeal from the Bankruptcy Court for the Southern District of Alabama's Orders dated April 28, 2017, May 3, 2017, and June 21, 2017. Appellant has submitted several briefs in support of his appeal. (Docs. 11, 18, 19, and 26). The remaining interested parties have also filed briefs in opposition. (Doc. 13, 16, 25, and 27). This dispute is ripe for resolution. For the reasons stated herein, the Bankruptcy Court's Orders are **AFFIRMED.**

### I.    Background

The facts of this case are well-documented in Judge Oldshue's Order in this matter from April 28, 2017.[1] Appellant filed the relevant Chapter 11 petition on July 8, 2016. On July 25, 2016, Appellee Levada EF Five, LLC ("Levada") filed a Motion to Dismiss Appellant's Chapter 11 case, or in the Alternative, for the Appointment of a Chapter 11 Trustee. On September 22, 2016, Appellees Equity Trust Company, Custodian f/b/o David E. Hudgens and Hudgens & Associates,

---

[1] For a more complete depiction of the previous proceedings in this matter, the factual background concerning Appellant's present Chapter 11 case and his previous Chapter 11 case are available at Doc. 3 at 1459 – 1472. The facts, as contained herein, are excerpted from Appellant's Brief in Support. (Doc. 11). No party in opposition disputed the facts as Appellant presented them in his Brief, nor the legal standards governing the issues Plaintiff presents in this matter. (Doc. 13 at 5; Doc. 16 at 8 – 10; Doc. 25 at 8, 9).

LLC ("Hudgens Creditors") filed a motion requesting the Bankruptcy Court appoint a Chapter 11 Trustee over Mr. Breland's case.

On September 30, 2016, Appellant filed an omnibus brief opposing each of the Motions to Dismiss or to Appoint a Trustee. In his brief, Appellant argued that neither dismissal nor appointment of a trustee were in the best interest of creditors or the estate. On October 6, 2016, the Hudgens Creditors filed a response to the Appellant's omnibus brief and asserted that appointing a Chapter 11 Trustee was proper. The Bankruptcy Court then held a motion hearing. On December 19, 2016, Levada filed a post-hearing brief. The Hudgens Creditors did the same on March 14, 2017. Appellant also filed a post-hearing brief and in it, argued that appointing a trustee implicated the Thirteenth Amendment based on a reading of 11 U.S.C.S. §1115 in conjunction with 11 U.S.C.S. § 1104. On March 30, 2017, the Bankruptcy Administrator filed a response to the various motions. The Bankruptcy Administrator argued that cause existed for the appointment of a Trustee and argued that the Thirteenth Amendment does not prohibit the appointment of a Trustee.

On April 6, 2017, Appellant filed an Expedited Motion to Dismiss [his] Petition for Bankruptcy under § 1112(b). In that Motion, Appellant argued that circumstances had changed and that dismissal was in the best interest of creditors and the Estate. Appellant also reiterated his constitutional claim in this motion, arguing "appointment of a Trustee would require Debtor to provide services and his net disposable income in reorganizing thereby forcing the Debtor to work for the trustee and the estate without compensation in a state of involuntary servitude." (*see* Doc. 11 at 13). The Bankruptcy Administrator filed a response on April 11, 2017, and the Hudgens Creditors filed a response on April 28, 2017. The United States and Levada filed

responses on April 28, 2017. In its response, Levada argued that Appellant's Thirteenth Amendment argument was premature because "no plan requiring the payment of post-petition income had been proposed and that appointment of a trustee would not violate the Thirteenth Amendment." (Doc. 11 at 16).

Appellant then filed another Brief in Support of his Expedited Motion to Dismiss. In it, he again argued that the appointment of a Trustee would be inappropriate and force him into a state of involuntary servitude. The Bankruptcy Court entered an Order and Memorandum Opinion on April 28, 2017. In it, the Bankruptcy Court found cause for the appointment of a Trustee but did not address the Appellant's constitutional argument. (Doc. 3 at 1460 – 1472). The Bankruptcy Court entered an Order appointing a Chapter 11 trustee on May 3, 2017. On May 9, 2017, the Trustee filed an application to employ the Appellant as a consultant.[2] On May 12, 2017, the Appellant filed his motion to vacate the April 28th Order, which authorized the appointment of a Trustee, again asserting a violation of the Thirteenth Amendment and specifically requested that the Bankruptcy Court address his constitutional claim. The Bankruptcy Administrator filed a response to the Motion to Vacate on May 17, 2017, arguing that the Thirteenth Amendment question was not ripe for resolution. On June 9, 2017, Levada filed its response to the Motion to Vacate and argued, *inter alia*, that the Bankruptcy court implicitly denied Appellant's constitutional argument. On June 12, 2017, the Trustee filed a response and an amended response to the Motion to Vacate, adopting the other parties' positions. The

---

[2] This Motion was subsequently denied by the Bankruptcy Court in response to several creditors' objections, noting for the reason of denial, Breland's conduct warranting the appointment of the Trustee in the first place. Instead, the Bankruptcy Court ordered, on June 21, 2017, that Breland may retain all monies paid to him during the Chapter 11 case prior to the appointment of the trustee, that he may retain all Social Security benefits/payments going forward, and that Breland be paid $4,200 bi-monthly ($8,400 per month) for living expenses. (Doc.3 at 1821).

Hudgens Creditors also filed a Motion in Response on June 12th, arguing the Thirteenth Amendment was not implicated by the appointment of a Trustee.

On June 13, 2017, the Bankruptcy court held a hearing and discussed Appellant's Thirteenth Amendment claim. Appellant argued that the issue was ripe for determination because 11 U.S.C.S. §§ 541 and 1115, when read together, require all post-petition income and earnings to become property of the Estate. Appellant argued that the issue was ripe because these code provisions required that such property be placed out of his reach and that his subsistence was at the behest of the Trustee. Put another way, Appellant argued that the immediate trigger of 11 U.S.C.S. § 1115, which places post-petition income into the Bankruptcy Estate, provided sufficient ripeness because Appellant's injury-in-fact was that he had no control over his post-petition income. Appellant's counsel highlighted testimony that the Appellant could not just simply refuse to work for the trustee because if he did not, his "business would collapse, and the Appellant's 35 – 40 years of sweat building his business would be undone." Appellant's counsel also noted that the Appellant did not seek conversion to Chapter 7 because "such would not be in the best interest of creditors or the estate." (Doc. 11 at 18).

The Bankruptcy Court denied Appellant's Motion, finding Appellant's Thirteenth Amendment claim was not ripe for adjudication. (Doc. 3 at 1841 – 18562) ("This Court finds this argument to be premature as no plan of reorganization has been submitted by the Debtor or any other creditor or party in interest."). Appellant now presents five issues for this Court to consider on appeal:

> (1) Whether the Bankruptcy Court erred in appointing a Chapter 11 trustee under 11 U.S.C § 1104 given that Chapter 11 of the Bankruptcy Code, including 11 U.S.C. §§ 541 and 1115, includes post-petition income, earnings, and/or wages of an individual

debtor, here, Mr. Breland, as property of the estate, thus forcing Appellant into involuntary servitude in violation of the Thirteenth Amendment.

(2) Whether the Bankruptcy Court erred in appointing a Chapter 11 trustee under 11 U.S.C. § 1104, given that the case remained a reorganization case at the time of allowance of the appointment and at the time of appointment, requiring a Chapter 11 plan to be filed that would, by necessity under 11 U.S.C. § 1129 require an individual debtor's projected disposable income, earnings, and/or wages to be included in such a plan, thus further forcing Appellant into involuntary servitude in violation of the Thirteenth Amendment to the Constitution of the United States of America.

(3) Whether the Bankruptcy Court erred in failing to vacate its Orders related to the appointment of a trustee by holding that Appellant's challenge to the appointment of a Chapter 11 trustee in violation of the Thirteenth Amendment was not ripe for consideration.

(4) Whether the Bankruptcy Court erred in not dismissing the Chapter 11 case I lieu of appointing a Chapter 11 Trustee in this case, given the prohibitions of the thirteenth Amendment to the Constitution of the United States of America

(5) Whether the appointment of a trustee in an individual Chapter 11 case violates the Thirteenth Amendment to the Constitution of the United States of America

Each issue Appellant raises concerns the Bankruptcy court's appointment of a Trustee, save for the fourth issue, which only focuses on the Bankruptcy court's failure to dismiss his petition outright.  However, each claim centers on whether the Bankruptcy court violated the Thirteenth Amendment.

## II.    Legal Standard

Generally, district courts operate as appellate courts in bankruptcy matters.  *In re Sublett*, 895 F. 2d 1381, 1383 – 1384 (11th Cir. 1990).   An appellate court reviews questions of constitutional law *de novo*. *Graham v. R.J. Reynolds Tobacco Company*, 857 F.3d 1169, 1181

(11th. Cir. 2017) (citing *Nichols v. Hopper*, 173 F.3d 820, 822 (11th Cir. 1999)).  An appellate court also reviews a lower court's determination of core constitutional facts *de novo*. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1297-98 (11th Cir. 2017).  Generally, an appellate court reviews the denial of a motion to alter or amend a judgment for an abuse of discretion.  *Shuford v. Fidelity Nat. Property & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).  However, if the ruling on a motion to alter or amend a judgment "turns on a question of law," the appellate court reviews the lower court's ruling *de novo*. *United States EEOC v. St. Joseph's Hospital*, 842 F.3d 1333, 1343 (11th Cir. 2016).

III.   **Discussion**

a.   **Appellant does not have constitutional standing to raise his Thirteenth Amendment claims on the basis that the Bankruptcy Court's appointment of a Trustee violated his right to be free of involuntary servitude because Appellant did not have unlimited control of his post-petition property upon the filing his Chapter 11 petition.**

Before turning to the question of standing, the Court finds it useful to undertake an analysis of the code provisions at issue.  Under 11 U.S.C.S. § 301(a), "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."  Further, 11 U.S.C.S. §§ 541(a)(1) and (7) provide the following:

> [T]he commencement of a case under section 301, 302, or 303 of this title creates an estate. Such an estate is comprised on all the following property, wherever located and by whomever held:
> . . . all legal or equitable interests of the debtor in property as of the commencement of the case. [. . .]
> Any interest in property that the estate acquires **after** the commencement of the case.

(emphasis added). Among the Legislative Statement accompanying § 541 is the following:

> Section 541(a)(7) . . . clarifies that **any interest in property that the estate acquires after the commencement of the case is property of the estate**; for example, if the estate enters into a contract, after the commencement of the case, such a contract would be property of the estate. The addition of this provision by the House amendment merely clarifies that section 541(a) is an **all-embracing** definition which includes charges on property, such as liens, held by the debtor on property of a third party, or beneficial rights and interests that the debtor may have in property of another.

11 U.S.C.S. § 541 Legislative Statement (emphasis added).[3] Further notes within the legislation provide:

> When bankruptcy petition is filed, virtually all property of debtor at the time becomes property of the estate; debtor's contingent interest has consistently been found to be property of estate, and in fact, **every conceivable interest of debtor, future**, nonpossessory, contingent, speculative, and derivative, **is within reach of 11 U.S.C.S. § 541**.

*Id.* (citing *In re Yonikus*, 996 F.2d 866, Bankr. L. Rep. (CCH) P75276, 29 Collier Bankr. Cas. 2d (MB)

114 (7th Cir. 1993)). Likewise, under 11 U.S.C.S. § 1115, the property of an estate in which the

debtor is an individual includes, "earning from services performed by the debtor **after** the

commencement of the case but before the case is closed, dismissed, or converted to a case under

---

[3] Available at:
<https://advance.lexis.com/search/?pdmfid=1000516&crid=e6fa0321-cb3e-499d-8664-19d03031a9b7&pdsearchterms=11+U.S.C.S.+541&pdtypeofsearch=searchboxclick&pdsearchtype=SearchBox&pdstartin=&pdpsf=&pdqttype=and&pdquerytemplateid=&ecomp=Lf6_9kk&earg=pdsf&prid=211a7427-d64b-4702-bfde-5ec72dd02371>.

chapter 7, 12, ore 13, whichever occurs first."  11 U.S.C.S. § 1115(a)(1) (emphasis added).  Taken together, these provisions and commentary excerpts provide that once a debtor files a petition for bankruptcy, he or she should expect that any after-acquired property will fall into the Bankruptcy Estate.  Moreover, the property subject to the estate includes future earnings, as indicated by the breadth of the meaning of "property" within the statutory framework.  Thus, the Court draws the following conclusion: after a debtor files for bankruptcy, his future earnings and income are subject to the Bankruptcy Estate by operation of 11 U.S.C.S. §§ 541 and 1115.

A bankruptcy court may appoint a Trustee over an estate, under 11 U.S.C.S. § 1104, *inter alia*:

> for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor . . .

U.S.C.S. § 1104(a)(1).

The Court cannot address the merits of Appellant's claims because he does not have constitutional standing.  In its Brief in Opposition, the United States (as an intervenor), argues that Appellant lacks constitutional standing to raise his Thirteenth Amendment claims in connection with the appointment of a Trustee in his Chapter 11 bankruptcy because he has not suffered an injury-in-fact.  (*see generally*, Doc. 25).[4]  To support this claim, the United States argues that "Mr. Breland has voluntarily chosen to continue to work" and that he is "not being

---

[4] Other interested parties also argue that Appellant lacks constitutional and prudential standing to raise these issues and raise substantially arguments.  (*see e.g.,* Doc. 13 at 18 – 21).

physically or legally compelled to work for the Trustee by any provision of the Bankruptcy Code." (Doc. 25 at 16). The United States further argues that Appellant has suffered no injury because "[t]he Trustee has only taken the place of Mr. Breland as the fiduciary of the estate" and that "[e]ven without the appointment of the Trustee, Mr. Breland would not have had full control of the estate accounts since he only served as a fiduciary." (*Id.* at 17; *see also* Doc. 13 at 10). Finally, the United states argues that Appellant has suffered no injury-in-fact because no party has proposed a reorganization plan, and thus, Appellant positing that he will lose all his post-petition income is mere conjecture. (*Id.*; *see also* Doc. 16 at 28 – 30).

Appellant presents three arguments to rebut the charge that he does not have constitutional standing. Specifically, Appellant argues that if he chooses to stop working, his business will fail, which places him in a "psychological bind"; that the United States' argument concerning his former status as debtor-in-possession fails because after the Trustee was appointed, he lost the ability to convert or dismiss the case pursuant to 11 U.S.C.S. § 1112; and that even though no plan has been proposed, Appellant still suffered an injury because 11 U.S.C.S. §§ 1123 and 1129 require post-petition income to fund a plan as needed and as a benchmark for reorganizational plan approval. (Doc. 26 at 7 – 9). In response, the United States effectively reiterates its previous arguments, but adds:

> . . . the United States does not contend that petitioning for bankruptcy waives all constitutional challenges to the Code. However, Mr. Breland's choice to file for bankruptcy is relevant in determining the cause of the injuries asserted. Mr. Breland's choice to enter bankruptcy triggered the injuries of which he complains because this decision made Code sections 1112, 1115, 1123 and 1129 applicable to his estate . . . under section 1112, Mr. Breland has no unequivocal right to dismiss his case absent a showing of "cause"; that was so even prior to the Trustee's appointment, so Mr. Breland's argument is illogical.

(Doc. 27 at 6) (internal citations omitted).

In order to establish constitutional standing, a party must show:

> (i) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury [must be] fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv*s., Inc., 528 U.S. 167, 180-81 (2000).  None of the alleged injuries Mr. Breland has described fit these criteria.  Mr. Breland first argues that his choice to work or not is "no real choice at all."  (Doc. 26 at 7).  Here, Mr. Breland asserts that he is  " . . . faced with a decision to forfeit his life's work and let his companies fail, or to toil for the benefit of his creditors" and that "[s]uch a situation placed the Appellant in a state of involuntary servitude in violation of the Thirteenth Amendment."  (*Id.*).  Mr. Breland further argues that the work in which he is now engaged is not for his own benefit because "the immediate trigger of § 1115 placed his post-petition income into the Estate."  (*Id.*).  Mr. Breland also opines that should he stop working his business would certainly collapse, and that this predicament places him in a "psychological bind."  (*Id.*).  Mr. Breland's first argument can be broken down into two discrete sub-parts:

(1) The appointment of a Trustee has left him in a state of involuntary servitude because he must either work or lose his business; and

(2) He has been injured-in-fact because he is not working for his own benefit by operation of 11 U.S.C.S. § 1115 and the placement of his post-petition income into the Bankruptcy Estate, coupled with "working for the trustee," placed him in a "psychological bind."

Mr. Breland is not being coerced to work, nor does 11 U.S.C. § 1115 place him in a state of involuntary servitude. According to the record, the post-petition income Mr. Breland earns is accumulating in his Bankruptcy Estate. However, Mr. Breland is under no obligation to continue to work because the Bankruptcy Code does not require it.[5] Further, as discussed in more detail below, there is no reorganization plan in place requiring Mr. Breland to continue working "for the benefit of creditors" as he describes. Rather, if such a plan existed, he might have standing to pursue a Thirteenth Amendment claim. *In re Herberman,* 122 B.R. 277, 284 (1990) (". . . the Thirteenth amendment is not implicated so long as the law in question does not 'compel performance or continuance of a service.'"). Nevertheless, such is not the case and Mr. Breland suffers no actual or imminent injury in this regard.

As to Mr. Breland's contentions that 11 U.S.C.S. § 1115 requires his post-petition income to be placed under the Trustee's control, Mr. Breland is only partially correct. As noted above, 11 U.S.C. § 541 requires that even when no trustee is appointed to a bankruptcy case, the property and earnings a debtor acquires post-petition become property of the estate. Thus, the post-petition income Mr. Breland was to earn while in Chapter 11 bankruptcy was to become property of the estate by operation of § 541 alone. The fact that Mr. Breland is in a psychological bind because he cannot move his money around as he pleases is not sufficient for constitutional standing, much less a finding that the Bankruptcy court violated Mr. Breland's Thirteenth Amendment rights.

Mr. Breland's second argument relies on claims that the Bankruptcy Court's appointment of a Trustee over his estate resulted in him being placed in a state of involuntary servitude

---

[5] *see e.g.,* Doc. 13 at 9 – 18.

because "[it] trigger[ed] the coercive effect of § 1115's inclusion of post-petition income" and "[he] lost his ability to convert the case or dismiss it." (Doc. 26 at 8). This argument is also unpersuasive. On the issue of Mr. Breland's access to his post-petition income, the Court notes again that upon filing his petition for bankruptcy, Mr. Breland was not entitled to do with his post-petition income as he pleased. Rather, as a fiduciary to the bankruptcy estate, Mr. Breland, while a debtor-in-possession, had a duty to protect and conserve the estate's assets for the benefit of creditors. This is a paramount duty of a trustee or a debtor-in-possession. *Commodity Futures, Com. v. Weintraub*, 471 U.S. 343, 353 (1985); *Tippins Bank & Tr. v. Jarriel (In re Jarriel)*, 518 B.R. 140, 146 (Bankr. S.D. Ga. 2014); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) (noting the a debtor in possession is depended upon to carry out the fiduciary responsibilities of a trustee and if the debtor in possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee); *In re Whitehurst*, 198 B.R. 981, 984 (Bankr. N.D. Ala. 1996) ("A debtor in possession is required to act as a fiduciary."); *In re Harp*, 166 B.R. 740, 746-47 (Bankr. N.D. Ala. 1993) ("What do these 'fiduciary responsibilities' mean to a debtor-in-possession? They imply a special burden on debtors such as the Harps to ensure that the resources that flow through the debtor-in-possession's hands are used to benefit the unsecured creditors and other parties in interest."). This means that all of Mr. Breland's post-petition income, per 11 U.S.C.S. § 541, was subject to his Bankruptcy Estate, and as a fiduciary, Mr. Breland could not freely dispose of it.[6]

---

[6] The Court notes that due to the nature of Appellant's business, some of his post-petition income may not have automatically become the subject of his Bankruptcy Estate under 11 U.S.C.S. § 541(a)(6) – at least to the extent that said income was derived from his services to property held in the estate. ("The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: [ . . .] Proceeds, product, offspring, rents, or profits of or from property of

As noted by the parties, the Trustee has only taken the place of Mr. Breland as the fiduciary of the estate and even if he were to remain the debtor-in-possession, he could not merely do with his post-petition income as he pleased. Thus, he has experienced no injury-in-fact in this regard.

As to Mr. Breland's contention that he suffers an injury because he has "lost the ability to convert or dismiss" his case following the appointment of the Trustee, this too is unpersuasive. Appellant argues that he suffered injury because he now cannot dismiss his petition or convert his case to Chapter 7 without the approval of his trustee, this being triggered by the Bankruptcy court's appointment under 11 U.S.C.S. § 1104(a)(1). However, much like Appellant's contention regarding access to his post-petition funds, Mr. Breland was not in control of the dismissal of his case from the outset. After filing under Chapter 11, Mr. Breland was subject to the provisions of 11 U.S.C.S. § 1112(b), which only permitted dismissal for "cause" ("the court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter . . . for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.") 11 USCS § 1112.

Moreover, the suggestion in Mr. Breland's argument that he would have had cause for dismissal and the Bankruptcy court would have agreed at another point subverts notions of standing as well as ripeness. The Court notes too that Mr. Breland could have originally filed under another chapter, avoiding this matter altogether.[7] Mr. Breland argues strenuously that

the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.").

[7] *In re Herberman,* 122 B.R. 273, 284 (1990) (". . . [the debtor] can choose to file under that chapter in the first place. There is nothing particularly remarkable about the fact that the choice of chapters involves a trade-off of benefits and burdens. There is certainly nothing unconstitutional: A clear distinction exists between peonage and the voluntary performance of labor or rendering of service in payment of a debt.")

opposing parties' arguments concerning the voluntariness of his petition should play no part in this Court's determination of whether he has the standing to assert his Thirteenth Amendment challenges. (*see e.g.* Doc. 26 at 8, 9) (". . . the fact that Appellant originally voluntarily filed his bankruptcy petition has no bearing on his ability to assert a Thirteenth Amendment Challenge [*sic*] . . . Simply voluntarily filing for bankruptcy relief is not a waiver of the rights provided under the Thirteenth Amendment."). For this proposition, Mr. Breland relies heavily on *In re Clemente*, 409 B.R. 288 (Bankr. D.N.J. 2009) (*see* Doc. 26 at 9). However, Appellant's assertion here misconstrues the opposing parties' argument. The opposing parties are not arguing that Mr. Breland's voluntary petition indicates that he waived a right to be free of involuntary servitude. Rather, the parties note that, much like the *Herberman* court, Mr. Breland had several avenues of redress available and each avenue carries specific burdens. (*see e.g.,* Doc. 16 at 26, 27). Moreover, as the Bankruptcy Administrator pointed out in his Brief in Opposition, the *Clemente* court declined to address whether the debtor was subjected to involuntary servitude in that case; neither did that court extend its analysis to 11 U.S.C.S. § 1129. (Doc. 13 at 17).

Mr. Breland was given the opportunity to act as the debtor-in-possession, to act as the fiduciary over his bankruptcy estate, and unquestionably took actions that gave the Bankruptcy Court cause to remove him from that position. In sum, Mr. Breland has not suffered an injury-in-fact due to the fact that he cannot now dismiss or convert his case. *See also, In re Herberman*, 122 B.R. 273, 283 (1990) ("It is true that the debtor cannot dismiss his case as of right once the chapter 11 is filed, but that does not render the proceeding itself peonage or involuntary servitude, any more than would the federal government's levying on wages to collect unpaid taxes constitute impermissible enslavement.").

Appellant's final argument that he suffered an injury-in-fact due to the mandates in 11 U.S.C.S. §§ 1123 and 1129 is meritless. Here, Appellant asserts that he has already suffered an injury-in-fact *prior* to the proposal of a reorganization plan because "11 U.S.C.S. §§ 1123 and 29 both **require** post-petition income to fund a plan as needed and use such income as a benchmark for approval of a plan." (Doc. 26 at 9) (emphasis added). Because of this, Appellant argues that "a plan that has been objected to will **likely** include [his] **projected** post-petition income for a period of five years" – he would be subjected to a state of involuntary servitude for a time exceeding that which he assumes he has already been subjected to.

In response, the United States and other parties note that the statutory language in the provisions upon which Appellant relies does not compel the use of his post-petition income to fund a plan. (*see e.g.,* Doc. 13 at 15, 16; Doc. 27 at 5). Instead, there is only a possibility that Appellant's post-petition income *could* be used in a reorganization plan; there is nothing "concrete" about this possible financial hit Appellant might sustain in the future. Moreover, this Court can find no case (and Appellant provides none) where a court found the use of a debtor's projected disposable income to repay his creditors constituted a violation of the Thirteenth Amendment, let alone sufficed for an injury to pursue a constitutional claim.

## CONCLUSION

Considering the foregoing, the Court finds that Mr. Breland lacks constitutional standing to raise his Thirteenth Amendment claims. Because Appellant cannot clear the first hurdle

necessary to show that this matter is justiciable, his requests for relief are denied and the Bankruptcy Court's orders from April 28, 2017, May 3, 2017, and June 17, 2017 are **affirmed**.[8]

      **DONE and ORDERED** this 30th day of September, 2019.

/s/ JEFFREY U. BEAVERSTOCK_____
UNITED STATES DISTRICT JUDGE

---

[8] The Court also affirms the Bankruptcy Court's order refusing to dismiss Appellant's petition outright as articulated in issue four of Appellant's brief because Appellant has suffered no injury-in-fact as a result of that court's refusal to dismiss his petition.